(52 South. 540.)

No. 18,023.

KELLY v. PETERS.

(May 9, 1910. Rehearing Denied June 6, 1910.)

*(Syllabus by the Court.)*

SHIPPING (§ 84*)—INJURY TO EMPLOYÉ WHILE UNLOADING VESSEL — NEGLIGENCE OF DEFENDANT—EVIDENCE.

Two different sets of workmen were engaged in removing a lot of staves from a barge landed at the foot of Marengo street in the city of New Orleans, to the wharf opposite that landing, and in taking the logs from the wharf to the cars waiting for them. One set were in the employ of the Leyland Company; the other in the employ of the defendant. The two sets of workmen, though they co-operated with each other to a certain extent, had separate and distinct duties, and were under different management and control. The plaintiff, an employé of the Leyland Company, engaged on the wharf in receiving the logs when they should have been hoisted over to the wharf through the instrumentality of a derrick, was injured by the careless and negligent handling of the derrick in allowing the boom attached to it to swing one of the logs over and on to the spot where the employés of the Leyland Line were at work receiving and carrying away the logs as received. The man in charge of the operation of the derrick was an employé of the defendant who did not act under the orders of the foreman of the "receiving gang" or any employé of the Leyland Company. The defendant was the party responsible for the injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 349–351; Dec. Dig. § 84.*]

Appeal from Civil District Court, Parish of Orleans; Walter B. Sommerville, Judge.

Action by George Kelly against Henry Peters. Judgment for plaintiff, and defendant appeals. Amended and affirmed.

Theodore Peters and Robert H. Marr, for appellant. Samuel Sansum, for appellee.

### Statement of the Case.

NICHOLLS, J. The plaintiff prayed for judgment against defendant for the sum of $10,000, on the ground that on November 20, 1908, the defendant had possession of a certain derrick and barge, upon which a number of large and heavy logs had been laden for the Frederick Leyland Company; and, at the direction and by the order of defendant, the defendant's servants and employés, duly appointed by defendant, and acting within the scope of their employment for defendant, were unloading said logs by means of said derrick; and the said Frederick Leyland Company directed plaintiff and a number of other laborers to go to the place where said logs were being unloaded, and receive said logs, and roll said logs back on the

wharf; and about half past 8 o'clock in the morning of the day and year first aforesaid, while plaintiff and said other laborers were endeavoring to roll back on the wharf a certain log which was then on a dolly, the defendant's said servants, agents, and employés, acting within the scope of their employment for defendant, negligently and carelessly allowed and permitted a certain log, which defendant's said servants, agents, and employés were attempting to put on said wharf by means of said derrick, to swing against and strike with great force and violence plaintiff's right hand, while plaintiff's right hand was resting on the log, which plaintiff and said other laborers were endeavoring to roll back on said wharf, and smashed plaintiff's right hand and cut off the second finger of plaintiff's right hand that it had to be amputated, and broke, crushed, and bruised the third finger of plaintiff's right hand; that all said injuries were caused by the negligence and carelessness of defendant's said servants, agents, and employés, acting within the scope of their employment for defendant, in negligently and carelessly allowing and permitting the log which they were attempting to put on the wharf to swing against and strike plaintiff's right hand, and in negligently and carelessly attempting to put into the very place where plaintiff and said laborers were working the log which injured plaintiff's hand.

Plaintiff avers that he did not know that defendant's said servants, agents, and employés were going to place a log into the very place that plaintiff was working, and that he did not know of the presence of the log that struck his hand until the log struck and injured his hand. Plaintiff also avers that the injury to his said hand, and the cutting off of his said fingers, has caused and is still causing him great pain and suffering, and that all his said injuries are permanent and greatly reduces his earning capacity.

In view of the premises, plaintiff prayed that defendant be cited to appear and answer the matters and things aforesaid, and, after due proceedings shall be had according to law, plaintiff have judgment in his favor and against defendant for the sum of $10,000, with interest at the rate of 5 per cent. per annum from date of judgment, and all costs of suit, and plaintiff prays for all general relief.

Defendant filed a general denial, and prayed that the plaintiff's suit be dismissed.

The case was tried before the district judge who rendered a judgment in favor of the plaintiff against the defendant for $1,000, with legal interest from date of judgment. Defendant appealed.

Plaintiff answered the appeal, praying that the judgment be increased to $5,000.

On the morning of the 20th of November, 1908, while a number of logs were in process of being unloaded from a barge at the foot of Marengo street, in the city of New Orleans, for the purpose (after being received at the wharf) of being removed therefrom by cars, George Kelly, a laborer, in the employ of the Leyland Company was severely injured. The fingers on his right hand were mashed by one of the logs as it was being hoisted from the barge to the wharf, through the instrumentality of a derrick belonging to and controlled by an employé of the defendant, Henry Peters.

There were two distinct sets of men engaged in this work; one set for the purpose of removing the logs from the barge up to the wharf, the other set for the purpose of receiving the logs after they should have been so raised, and placing them on dollies or trucks, and rolling them back upon them to the cars.

The logs, after being raised to the wharf, were swung into the desired position upon the wharf by means of a boom connected with the derrick. The machinery employed to

work the derrick was controlled as to its operations by a person known as the "derrick man," who gave orders to the engineer when to start and stop, and who also controlled the movement of the boom. The derrick man in this case was an employé of the defendant, as was also the engineer. The logs were raised by means of a chain attached to them, and the attaching of this chain to the logs was intrusted to two men upon the barge in the employ of the Leyland Company. It will be seen that part of the work for raising the logs to the wharf was done by employés of the Leyland Company, and part by employés of the defendant, while part of the workmen on the wharf were employés of the Leyland Company, and part were employés of the defendant. Both sets of employés, however, had separate and distinct duties and were under different managements, though each had to be guided to some extent by the action of the other; for instance, the men upon the barge gave notice to the derrick man when they had finished chaining a log so that he might give proper orders to the engineer under him, when and how the derrick should be moved and so the foreman of the receiving gang on the wharf (employed by the Leyland Company) would give notice to the derrick man (employed by defendant) when they were prepared to receive another log to be placed on the dolly.

The mere notification by the Leyland Company's men upon the barge to the derrick man that a log had been chained by them and was ready to be hoisted did not warrant him in at once thereupon giving his order to his engineer to start the machinery.

Before giving such an order, it was his duty to make certain that the situation on the wharf was such as to justify him in view of the danger to the men working at the dolly in having a log hoisted and swung across to the dolly at that time. This duty, the derrick man did not properly perform on this particular morning. The engine was by his order prematurely and negligently started, and a log hoisted and swung across to the dolly before the men who were at work at the time at the dolly had succeeded in removing the one which had just before been hoisted and swung across to them. The result was that the log so prematurely swung across struck the one that was at the dolly upon which the men were at work, mashing, and crushing the fingers of the plaintiff who had his hand upon it while at work.

The fact that the derrick man was in the employ of the defendant, Henry Peters, as was also the engineer, is shown beyond question by the evidence. The fact that neither the derrick man nor the engineer were authorized to receive orders from any one in the employ of the Leyland Company was also established.

Phillip Noeb, employed himself by the Leyland Company, and in charge as foreman of the employés of that company engaged in receiving the logs swung over to the dolly, being on the stand as a witness for the defendant, being questioned as to the manner in which the logs were handled, testified:

"They were taken from the derrick, you know, to be put over on the walk for the railroad. They were hooked on with a chain sling, and run up from the derrick to the height of the walk, and then we (the receiving gang) had to take them off the derrick. There was a dolly (owned by Thriffly & Co.) with a rope attached to the dolly, and a half hitch on the log in order to steer it and take it out away from the derrick. As the derrick landed it on the dolly, we would take it from the derrick over to the Illinois Central Landing so that the logs could be put on the cars when they came along. * * * When the log came over from the derrick it was swinging in, and he (the plaintiff) got his hand caught in some way."

Being asked on cross-examination:

"Q. Who was the man that directed that log to be swung in there?"

He answered:

"I don't know who it was. I am positive I don't know."

Being asked:

"Did Mr. Peters have a man there in charge of that instrument (the derrick), that they had to use for unloading the logs?"

He replied:

"Yes.

"Q. Was he the man that directed the log to be swung in—the log that struck the man?

"A. No, sir.

"Q. Well, who was the man that did that?

"A. One of the men of my men on the barge; he was the man who gave the order to swing the log in.

"Q. Was the log lowered by your orders?

"A. No, sir.

"Q. Was there nobody there to represent Mr. Peters?

"A. Yes, sir; there was.

"Q. Well, who was that man?

"A. That was the man we called the 'derrick man' in our line of work—he was the man that was there.

"Q. What is his name—wasn't he known by the name of Vic?

"A. Well, I know him by hearing them say it; but whether that is his name or not I do not know.

"Q. Was he not present at that time?

"A. Yes, sir.

"Q. He was an employé of Mr. Peters?

"A. Yes, sir.

"Q. You know that to be a fact, do you not?

"A. Yes, sir.

"Q. Isn't he the man that gives the order to swing in the logs?

"A. No, sir; he is not.

"Q. For what purpose is he there? What is he doing there?

"A. He is there for the purpose of taking orders from me to give me a log when I want it.

"Q. Well, did you give him any orders?

"A. No, sir; I did not, but one of the five men of the Leyland Line who was on the barge, he did. I did not give any orders to any one on the barge at the time.

"Q. What is this employé of Mr. Peters to do?

"A. He is there to act as derrick man.

"Q. What are his duties as derrick man?

"A. To see that the logs come from the derrick and are placed on those dollies.

"Q. Safely?

"A. Yes, sir.

"Q. Isn't he to look out and see that it (the log) does not land on the men who are working there?

"A. Yes, sir.

"Q. What was this man to do? He was in charge of the derrick, wasn't he?

"A. Yes, sir; he is to take orders from the foreman.

"Q. Is that all he does just to take orders?

"A. Yes.

"Q. Then there is nobody to see that those logs are safely landed on the dollies?

"A. According to my instructions.

"Q. This man was there, and that was his duty, was it not?

"A. Yes, sir."

Henry Peters, the defendant, testified that he was the owner of the derrick barge; that he was present at the time of the accident; that the derrick was in charge of "Vic" on that morning; witness did not know his full name. Witness' son, Eugene, was the foreman for him at the time; he was present when the accident happened. This man Vic at the time was standing on the cap of the wharf.

"Q. Was he at the time giving orders to the man who was running the winch which witness was operating?

"A. Well, the way that was— I will tell you—

"Q. I just asked you if he was ordering this man telling him or instructing him how to run the winch and how to lower the logs?

"A. He orders our engineer to go ahead when he gets orders to put the log on.

"Q. Was this man Vic in your employ at that time?

"A. Yes, sir; Vic is boss of the derrick. Vic was standing at that particular time on the cap of the wharf. From where he was standing he was in a position to see the men who were at work trying to roll those logs off.

"Q. What did his duty consist of? What was his work out there?

"A. He was to take orders from the longshoremen on the barge hooking the logs. When they hook on a log, then they tell him to go ahead, and the log comes up and comes over to the wharf. The men who were on the barge could not see the men working on the wharf for the simple reason that the barge is about 15 feet below the wharf. Vic hasn't anything at all to do with the men who are working on the wharf. The men that hook the logs on don't have anything to do with our derrick. The man on the cap of the wharf is the man giving the signals to our engineer, because the longshoremen don't give him any orders. The longshoremen hook the logs on, and our man Vic is to look out for our derrick, and the engineer takes orders from Vic. The longshoremen do exactly what they want, and they won't take any order from us or from any of our men at all.

"Q. Does not your man Vic give orders to the winchmen to lower the logs?

"A. When he gets the order from the longshoremen.

"Q. But he gives the order to the engineer.

"A. Yes, sir, to the engineer.

"Q. Didn't he give the order to the winchman by reason of which the log was swung in and this man was hurt?

"A. Well, the man on the deck they are the

ones that told him to go ahead and they swung it on.

"Q. Then Vic gave the order to the engineer to swing it after he got orders from the longshoremen?

"A. Yes, sir.

"Q. That the way it was?

"A. Yes, sir."

Vic Zichirichi was called as a witness for the defendant (he is the party referred to as the derrick man Vic); he testified that he was in the employ of the defendant, Peters; that he was handling the derrick at the time of the accident; that he was standing on the wharf at that time; that Engineer Peters, son of the defendant, was his foreman at that work; it was he who gave him his orders; he gave witness the order to lower the log down, and so the log was lowered the way he said; he was the one that gave the order to him to tell the engineer to lower it.

We do not think we should go further into the evidence than to make it clear who was in charge of the derrick at the time of the accident. We are satisfied that it was in charge of an employé of the defendant, and that he was not under the orders of any one in the employ of the Leyland Line. We are satisfied that under the evidence the judgment of the district court is correct as to the liability of the defendant for the injury which plaintiff received. Plaintiff prays that the judgment appealed from should be increased as to amount.

We are of the opinion that the amount of the judgment is too small, and that the judgment in that respect should be amended.

It is therefore ordered, adjudged, and decreed that the judgment be amended, and the amount of the same be, and the same is, increased to the sum of $2,500, and, as so amended, the judgment appealed from is hereby affirmed.

PROVOSTY, J., takes no part, not having heard the argument.